Joseph **RUFFINO** and Randall A. **Noble,** Plaintiffs,

v.

Michael **SHEAHAN,** individually and in his official capacity as Sheriff of Cook County, Illinois, et al., Defendants.

No. 96 C 2234.

United States District Court, N.D. Illinois, Eastern Division.

Aug. 10, 1999.

Charmaine Elizabeth Dwyer, Chicago, IL, for Joseph Ruffino, Randall A Noble.

Thomas Vincent Lyons, Cook County State's Attorney, Chicago, IL, James J. Ryan, Cook County Sheriff's Department, Chicago, IL, for Michael Sheahan, Joseph P Kelly, David Mullany, Silverio Flores.

## MEMORANDUM OPINION AND ORDER

LINDBERG, District Judge.

Defendant Michael Sheahan has filed an "emergency" motion for a ruling on the defense of qualified immunity and on Sheahan's liability in his personal capacity for Counts III and V. The court's previous denial of the motion for summary judgment on Count I obviously rejected all of defendant's arguments, including the defense that no genuine issue of material fact existed and the defense of qualified immunity. (The court has twice informed defendant's attorneys that this is the case.)

To reiterate, as to Count I (the First Amendment claim against Sheahan based on alleged retaliation for plaintiffs' political affiliation), the court has denied summary judgment based on a defense of qualified immunity. The court found that a factual dispute exists as to Sheahan's knowledge, actions and intent concerning the deputization of the plaintiffs and as to whether a legitimate, nonpolitical reason for the dedeputizations existed.

Sheahan claims that he raised the issue of qualified immunity as to his liability in his individual capacity in the defendants' motion to dismiss, filed in September 1996. The doctrine of qualified immunity shields government officials from liability in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have been aware at the time the alleged constitutional violation occurred. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). A plaintiff must show that a constitutional violation occurred and that the applicable constitutional standards were clearly established at the time of the alleged violation. *Erwin v. Daley,* 92 F.3d 521, 525 (7th Cir.1996).

■ Defendant states that the court "declined to rule on the issue of qualified immunity at that time." In truth, the defendant's motion to dismiss asserted that Count I should be dismissed because the complaint did not contain enough allegations to enable defendant to discern what the actual violation was under the First. Amendment. Defendant's proffered defense of qualified immunity as to this count contained no additional argument but merely restated the argument that plaintiffs had failed to plead sufficient facts to establish a constitutional violation.[1] "There is no heightened pleading standard for civil rights actions." *Baxter v. Vigo County School Corp.,* 26 F.3d 728 (7th Cir.1994). Rather, the general notice requirements of Fed.R.Civ.P. 8(a) apply. Although defendant may raise the qualified immunity defense in a motion to dismiss, when it does so the court must accept all factual allegations pleaded in the complaint as true. *Kernats v. O'Sullivan,* 35 F.3d 1171, 1175 (7th Cir.1994). The court found that the complaint contained more than sufficient allegations to satisfy Rule 8(a)'s notice pleading requirements and that the allegations, if taken as true, could establish a First Amendment violation. Because defendant's qualified immunity argument was based on its argument that the facts alleged were insufficient to support a First Amendment claim, the court's denial of the motion to dismiss Count I was also a *denial* of the motion to dismiss Count I based on qualified immunity. At no time after the hearing and oral ruling on the motion to dismiss did the court consider any issue from the motion to dismiss still pending. The court's denial of the motion to dismiss, of course, did not bar defendants from raising the issue of qualified immunity at a later stage in the proceedings.

In the motion for summary judgment on Counts III and V, however, the defendants did not raise the issue of qualified immunity as to Sheahan. In any event, the issue of qualified immunity as to these counts is moot considering that the court has granted Sheahan's motion for summary judgment as to liability in his individual capacity for Counts III and V.

The only constitutional claim remaining against Sheahan in his individual capacity is the First Amendment claim in Count I. Defendant contended in his motion for summary judgment that he is entitled to qualified immunity as to the First and Fourteenth Amendment claims against him. He claims that plaintiffs are unable to show a violation of their constitutional rights because the alleged deprivations of the privileges and benefits of their employment as deputy sheriffs "are very limited." At all times, "plaintiffs remained Sheriff's Office employees and received pay throughout the duration of the Merit Board proceedings." Defendant claims that plaintiffs cannot cite authority that such limited deprivations establish a constitutional violation. That is only partly correct. The court has granted defendant's motion for summary judgment as to Count II, plaintiffs' Fourteenth Amendment due process claim, because the alleged deprivations did not constitute the loss of a recognized property interest. *Swick v. City of Chicago,* 11 F.3d 85 (7th Cir.1993); *Shamley v. City of Chicago,* 163 Ill.App.3d 375, 114 Ill.Dec. 491, 516 N.E.2d 646 (1987).

■ A denial of benefits or privileges that does not constitute a loss of a property interest under the Fourteenth Amendment could still be enough for an employee to establish a First Amendment violation. *See Swick,* 11 F.3d at 87; *Rutan v. Repub-*

---

1. It was not until the reply that defendant offered supportive arguments as to why a defense of qualified immunity existed as to Count I. Of course, "arguments raised for the first time in a reply brief are waived." *United States v. Hughes,* 970 F.2d 227, 235 (7th Cir. 1992). The court therefore did not consider these arguments in ruling on the motion to dismiss. It notes, however, that defendant's arguments in the reply are still based on the contention that "under a heightened pleading standard," plaintiffs' allegations were inadequate.

*lican Party of Illinois,* 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990) (employer may not refuse to promote, transfer or recall employees based on political affiliation). The evidence indicated that plaintiffs were stripped of their stars, uniforms and weapon qualification identification cards; received unfavorable job assignments and unwarranted discipline; and that Sheahan filed Merit Board complaints against them, sought to terminate them and made public statements criticizing the group of dedeputized officers. Plaintiffs *have* cited case law holding that a campaign of harassment or disciplinary actions based on political affiliation could violate the First Amendment by "chilling" the exercise of the employee's constitutional rights. *Bart v. Telford,* 677 F.2d 622 (7th Cir.1982). "The effect on freedom of speech may be small, but since there is no justification for harassing people for exercising their constitutional rights it need not be great in order to be actionable." *Id.* at 625. Although the deprivations at issue in this case do not, even if proved, establish a property interest, based on the case cited above, they do constitute actions that could violate an employee's First Amendment rights. The dates of the cases cited also indicate that this right was well established at the time of the allegedly retaliatory acts.

The Sheriff continues his qualified immunity argument with the assertion that upon becoming aware of the alleged test score falsifications, he had a duty to pursue the discharge of employees accused of this misconduct. He claims that because the Sheriff's Office "followed the statutory provisions for termination ... plaintiffs cannot establish a constitutional violation [and] defendants are entitled to qualified immunity." This argument reveals a misapprehension of plaintiffs' allegations. Approximately 300 deputies were suspected of having falsified test scores. Only 30 of the 300 were dedeputized. The factual disputes remaining in this case include whether that choice of 30 was based on visible political affiliation, as plaintiffs con-

tend, or whether it was based on a legitimate and nonpolitical reason (seniority), as defendant contends. Whether plaintiffs can "establish a constitutional violation" is currently a matter of factual dispute. The court cannot grant a motion for summary judgment based on a defense of qualified immunity when the underlying factual allegations are disputed. Defendant offers no other basis for a qualified immunity defense.

For these reasons, defendant's motion for a ruling on the issue of qualified immunity is granted. Defendant's motion for summary judgment on the basis of qualified immunity as to Count I is denied.